

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-9-2008

# USA v. Smith

Precedential or Non-Precedential: Precedential

Docket No. 06-3112

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Smith" (2008). *2008 Decisions*. Paper 1298.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1298

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-3112

UNITED STATES OF AMERICA

v.

DEVON MONROE SMITH,

<u>Appellant</u>

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 05-00257)
Honorable Eduardo C. Robreno, District Judge

Submitted under Third Circuit LAR 34.1(a)
March 7, 2008

BEFORE: FISHER, GREENBERG, and ROTH, <u>Circuit</u> <u>Judges</u>

(Filed: April 9, 2008)

Patrick L. Meehan
United States Attorney
Robert A. Zauzmer
Assistant United States Attorney
Chief of Appeals
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

K. Kenneth Brown, II
Special Assistant United States Attorney
50 North Duke Street
Lancaster, PA 17602

    Attorneys for Appellee

Christopher D. Warren
1500 Walnut Street, Suite 1500
Philadelphia, PA 19102

    Attorney for Appellant

———————

OPINION OF THE COURT

———————

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before this court on an appeal from a final judgment of conviction and sentence in this criminal case entered on June 6, 2006, following appellant Devon Smith's conditional plea of guilty after the District Court denied his motion to suppress. The circumstances of the case are straightforward. On June 8, 2004, Lancaster, Pennsylvania, police officers Christopher Laser and Richard Heim while on patrol observed Smith sitting in the passenger seat of an automobile that Danny Santiago was operating. Heim recognized Smith and was aware that there was an arrest warrant outstanding for him. Consequently, the officers stopped the vehicle and arrested Smith. Subsequently, Laser and Santiago got into an altercation during which Smith fled the scene. After additional officers arrived the police recaptured Smith and rearrested him. They also arrested Santiago at the scene of the stop.

The police did not know who owned the vehicle for neither Smith nor Santiago claimed to own it. Moreover,

Santiago said he did not know who the owner was, its registration papers were not available, and Santiago did not know the location of the registration papers.[1] Furthermore, inasmuch as the police arrested both men neither could drive the vehicle which had no other occupants. Moreover, there was no one else available at the scene to take its possession.

These circumstances created a problem for Laser and Heim because they believed that they should not leave the vehicle at the place where they stopped it inasmuch as the conditions in the area led them to believe that if they did so the vehicle might be damaged, vandalized, or stolen. Therefore, Heim impounded the vehicle and drove it to the police station. At the station during a routine warrantless inventory search of the vehicle, Laser found a loaded semi-automatic handgun in its glove department. He then interrupted the search which he resumed after he obtained a search warrant for the vehicle. Subsequently, on the same day, in a statement that he has not renounced as untruthful, Smith told police detectives that he had loaded the weapon and placed it in the glove department.[2] He also told them that he knew that he was a convicted felon and was aware that because of that status he was not lawfully permitted to possess the weapon.

On May 3, 2005, a grand jury indicted Smith for unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(c). Smith responded to the indictment by filing a motion to suppress the handgun as evidence. The District Court held an evidentiary hearing on the motion at which Heim, who was in Iraq, without objection by Smith, testified by video conference and Laser testified in person.

---

[1]At the suppression hearing that we will describe below Laser testified that at some point after the search he discovered that Smith's girlfriend owned the vehicle.

[2]In the District Court Smith unsuccessfully argued that his statement should be suppressed as the "fruit of the poisonous tree." Supp. app. at 41. In light of the result that we reach here that the seizure and search were lawful, there was no "poisonous tree."

Thereafter, by an order entered October 26, 2005, accompanied by a memorandum opinion, the court denied the motion to suppress. In its opinion the District Court held that the impoundment was lawful because Heim impounded the vehicle pursuant to police community caretaking function authority and Lancaster police use a standardized routine that they followed here to determine whether to impound the vehicle. The court further held that the impoundment was "not arbitrary or unreasonable."[3] We quote judicial authority describing the parameters of the community caretaking function authority below.

On November 8, 2005, Smith entered a conditional plea of guilty to the indictment but preserved his right to appeal from the denial of his motion to dismiss. See Fed. R. Crim. P. 11(a)(2); United States v. Zudick, 523 F.2d 848, 852 (3d Cir. 1975). The District Court accepted the plea of guilty and later sentenced Smith to a 192-month custodial term to be followed by five years of supervised release. It also imposed a $2,000 fine.

Smith appeals making the following argument:

> The decision by a police officer to impound a vehicle must be exercised pursuant to standardized criteria or the seizure is unconstitutional. The testimony presented in this case established that Officer Heim was exercising his discretion when he opted to impound the vehicle and that there were no standard policies or

---

[3]The District Court also held that the impoundment was lawful under Pennsylvania law and inasmuch as Smith predicates his argument on this appeal solely on the Fourth Amendment and does not contend that the District Court's state law analysis was wrong we do not review that analysis. Of course, we could not uphold the impoundment merely because it was lawful under state law as it still would have to meet Fourth Amendment standards and the state law might not satisfy them. See United States v. Coccia, 446 F.3d 233, 238 (1st Cir. 2006).

procedures which circumscribed or otherwise limited that discretion. The district court thus clearly erred when it found as a fact that the officer was acting pursuant to a standardized routine when he decided to impound the vehicle. Accordingly, the evidence obtained as a result of the unconstitutional seizure of the vehicle should have been suppressed.

Appellant's br. at 12. Significantly, Smith does not contend that even if the impoundment was lawful the inventory search was not lawful. Consequently, we focus on the validity of the impoundment rather than the validity of the actual search of the vehicle.


## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction pursuant to 28 U.S.C. § 1291. As we often have indicated, we exercise the deferential clear error standard in reviewing a district court's factual findings but exercise plenary review over its determination of legal issues. See United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002). In this case there is a sharp dispute of facts with respect to whether Heim was acting pursuant to a standardized routine when he decided to impound the vehicle. On the one hand, the government contends that, as the District Court held, the police followed a standardized routine in impounding the vehicle. On the other hand, Smith contends that Heim, rather than following a standard impoundment routine, simply exercised his discretion when impounding the vehicle as the Lancaster Police Department did not have standard policies or procedures which circumscribed or otherwise limited that discretion. Nevertheless we need not determine whether the District Court clearly erred on the basis of the record before it when it found that Heim was acting pursuant to a standardized routine when he impounded the vehicle because even if the court's finding was erroneous, for the reasons we will set forth we are satisfied that the impoundment was lawful. Thus, we decide this case assuming, as Smith

5

contends, that the Lancaster Police Department did not have a standard policy regarding the impounding and towing of vehicles.[4]

III. DISCUSSION

There was considerable evidence at the suppression hearing explaining the Lancaster Police Department's policy or lack of policy governing the impounding of vehicles and why the police impounded the vehicle in which Smith was riding. It is understandable that inasmuch as Smith challenges the District Court's factual finding that Heim acted pursuant to that policy, in his brief he quotes the evidence at length. Even though we accept for purposes of this appeal Smith's contention that the District Court erred when it found that Heim acted pursuant to a standardized procedure when he impounded the vehicle we, too, will quote the evidence at length as it bears on the reasonableness of his action when he impounded the vehicle. Heim testified as follows:

Q. So you would have been the individual who

---

[4]The government indicates in its brief that after the District Court adjudicated this matter and Smith appealed, the government itself discovered that the Lancaster Police Department has a written policy that the brief does not describe regarding the impounding and towing of vehicles. The parties apparently never brought this policy to the attention of the District Court and thus that court was not aware of the policy either when entering the order now on appeal or at any later date. Nevertheless, neither party has moved to remand the case to the District Court so that it might reconsider its decision in light of the policy and neither has moved to expand the record on this appeal to include this policy and, accordingly, we do not know what the policy is. We will not remand the case to the District Court to reconsider its decision in light of the policy and we have not expanded the record on our own motion to include the policy as Heim cannot have relied on the policy when he impounded the vehicle as he was not aware of it.

decided to impound the vehicle. Right?

A.      More than likely, yes.

Q.      Why was the vehicle impounded?

A.      Let me check my report here. Oh, actually, the reason the vehicle was taken into custody that day is because neither the driver nor Mr. Smith was the owner of the vehicle and we were going to try and contact the registered owner.[5]

Q.      Why did you have to impound the vehicle to contact the registered owner?

A.      Because a lot of times we leave vehicles on the street and they end up being stolen later down the road. A lot of times these vehicles are loaned out for drugs and duplicate keys are made. It was just to ensure that the rightful owner gets the vehicle back.

Q.      Is there any policy with respect to impoundment of vehicles?

A.      It's not actually impoundment. I can't say that there are actually policies on impoundment. We do for other things concerning vehicles. Off the top of my head I don't know.

---

[5]The government does not contend that Smith does not have standing to challenge the impoundment because it stipulated in the District Court that even though he did not testify at the suppression hearing, if he had done so he would have explained that his girlfriend, who was the owner of the vehicle, had lent it to him at the time of the arrest. See United States v. Baker, 221 F.3d 438, 442 (3d Cir. 2000).

7

Q.      So to your knowledge there is no standard procedure with respect to impoundment of vehicles.  Is that right?

A.      We have standard procedures for what we do with the vehicles after we take custody of them.  As far as actually taking the vehicle initially, I can't – like I said, we have so many policies that it's hard to remember.  A lot of times I will have to refer to the policy manual to make a decision on something.

Q.      Let me put it to you simply.  Do you know whether or not there is any standard procedure or policy in the Lancaster City Police Department with respect to the impoundment of vehicles?

A.      No.  I can't say specifically that I know for a fact.

Q.      Does that mean that the officer at the scene gets to make the decision as to whether or not a vehicle is impounded?

A.      Sometimes, yes, and sometimes a patrol supervisor will be contacted depending on the situation.

Q.      But again, the officer or whoever is making the decision has the discretion to decide whether or not to impound a vehicle.  Right?

A.      Not always, no.  If we're talking about a major crime – if it's a homicide or something, then that decision will be made by a supervisor or detective.  In this situation apparently it was me who made the decision about it.

Q.      But the point is, you have discretion in that regard.  Right?  You can impound it or not impound it, depending upon what you think is the best thing to do.  Correct?

A.      Again, that discretion is based upon the situation.  In this situation this vehicle was impounded by my discretion.

App. at 29-31.

Laser testified as follows:

Q.      And what happened to the vehicle?

A.      The vehicle itself was driven back to the station by Sergeant Heim, brought in for impounding.  At that time we were unaware of who the actual owner was, with neither subject taking responsibility for the vehicle.  And with where it was parked, the location where it was out [sic], was not a location where we had a tendency to leave vehicles for non-residents in that area, due to damage and vandalism.  And also for our policy at that point, the car was in our custody, so we had a duty to care for it.

App. at 32.

Q.      Okay.  You also alluded under direct examination to a 'policy' of the Lancaster City Police Department to take vehicles into custody. Didn't you?

A.      No, it was for handling of vehicles that are in our custody.

Q.      Very well.  So the policy that you are talking about is after the car has been taken into custody, how you take care of it and handle it.  Right?

A.      That is correct.

Q.      Okay.  And that would be basically the

9

written policy that has been marked SH1, right?

A.    Yes.

Q.    So that, just so we are clear, that is the policy you were referring to under direct examination?

A.    Yes.

App. at 33.

The government quotes little additional testimony in its brief urging us to uphold on the clear error standard the District Court's finding that Heim acted pursuant to a standardized routine when he impounded the vehicle. Rather, it seems to mix evidence tending to demonstrate the reasonableness of Heim's decision to impound the vehicle with evidence regarding the presence of a standard governing impoundment. Thus, the government tells us, quoting from Laser's testimony, that the vehicle was located at a place that the police did not have "a tendency to leave vehicles for non-residents in that area, due to damage and vandalism." Supp. app. at 12. It then contends that Laser's testimony only makes sense when he is "understood to be explaining that the police routinely impound vehicles in this same area, or areas like it, when no one is available to drive the car away." Appellee's br. at 31. Overall, after considering all of the testimony, we are of the view that the District Court's finding that Heim acted pursuant to a standardized procedure when he impounded the vehicle probably is erroneous. But we do not make a definitive determination on the point. Instead, as we have indicated that we will do, we will decide the case on the premise on which Smith presents it, i.e., the Lancaster Police Department did <u>not</u> have a standard policy regarding the impoundment and towing of vehicles when Heim impounded the vehicle.[6]

---

[6]Of course, the government now tells us that this is not so. See <u>supra</u> note 4.

The question that we resolve on this appeal is, surprisingly, apparently open in this Court for the government recites in its brief that it "is unaware of any Third Circuit precedent directly addressing the precise legal claim presented by Smith," i.e., the constitutionality of a vehicle impoundment under the Fourth Amendment in circumstances in which there is no standardized policy regarding the impoundment and towing of vehicles. Appellee's br. at 23. We, too, are not aware of any direct precedent in this Court on the point and Smith does not cite any. There is, however, precedent on the issue in other courts, most significantly in the Supreme Court. Indeed, Smith primarily relies on Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738 (1987). In Bertine, a police officer arrested Bertine for driving his van under the influence of alcohol. Id. at 368, 107 S.Ct. at 739. After the arrest but before a tow truck arrived at the scene a second officer acting in accordance with standard local police procedures made an inventory search of the vehicle and found narcotics. Id. at 370-71, 107 S.Ct. at 740-41. In the ensuing trial court proceedings the court suppressed the evidence and, after the state's unsuccessful appeal to the Colorado Supreme Court, the case reached the Supreme Court on the issue of the validity of the search under the Fourth Amendment.

The Supreme Court, after rejecting Bertine's challenges predicated on other theories that we need not recount, reached his final argument which it described and disposed of as follows:

> Bertine finally argues that the inventory search of his van was unconstitutional because departmental regulations gave the police officers discretion to choose between impounding his van and parking and locking it in a public parking place. The Supreme Court of Colorado did not rely on this argument in reaching its conclusion, and we reject it. Nothing in [South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092 (1976)] or [Illinois v. Lafayette, 462 U.S. 640, 103 S.Ct. 2605 (1983)] prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal

11

activity. Here, the discretion afforded the Boulder police was exercised in light of standardized criteria, related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it. There was no showing that the police chose to impound Bertine's van in order to investigate suspected criminal activity.

Id. at 375-76, 107 S.Ct. at 743 (footnote omitted).[7]

Smith also relies on United States v. Duguay, 93 F.3d 346 (7th Cir. 1996). In Duguay, as here, the police made a vehicle inventory search following an impoundment. In the inventory search the police recovered cocaine which led to Duguay's prosecution for possession of cocaine with intent to distribute. Id. at 349. Duguay, who was a son of the vehicle's title holder, see id. at 353, moved in the district court to suppress the cocaine on Fourth Amendment grounds, challenging both the impoundment and the inventory search. The district court denied the motion and Duguay ultimately was convicted and sentenced.

Duguay appealed and the Court of Appeals for the Seventh Circuit reversed. Though to a large extent the court of appeals in its opinion focused on the validity of the inventory

---

[7]Smith also cites and quotes the Supreme Court's opinion in Florida v. Wells, 495 U.S. 1, 110 S.Ct. 1632 (1990), in which the Court held that inasmuch as the police "had no policy whatever with respect to the opening of closed containers encountered during an inventory search," the inventory search involved there in which the police found marijuana in a suitcase "was not sufficiently regulated to satisfy the Fourth Amendment." Id. at 5, 110 S.Ct. at 1635. Clearly, Wells, which involved an inventory search, is distinguishable from our case involving an impoundment and thus is of little use here. Similarly, United States v. Salmon, 944 F.2d 1106 (3d Cir. 1991), which the government but not Smith cites, is not helpful here as it deals with the need for standardized criteria or an established routine for inventory searches. See id. at 1119-24.

search it also held that the police "did not articulate a constitutionally legitimate rationale for impounding Duguay's car." Id. at 352. Moreover, the court indicated that "[w]hile a written protocol is not sine qua non" for a lawful impoundment, the court "was not satisfied that the . . . Police Department employs a standardized impoundment procedure." Id. at 351. The court indicated that "[t]he touchstone of Fourth Amendment analysis is 'reasonableness.'" Id. at 353. It also said that "[t]he decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares as parking lots." Id.

In Duguay the court of appeals, in reversing the order denying the motion to suppress, pointed out that the police impounded the vehicle even though Duguay's girlfriend who had driven the vehicle to the place of his arrest, and remained at the scene, "had possession of the keys, and was prepared to remove the car from the street." Id. Moreover, another son of the title holder, Duguay's brother, also was present at the time of the arrest. Id. These circumstances led the court to indicate that the impounding of a vehicle for caretaking purposes "without regard to whether the defendant can provide for its removal is patently unreasonable" and that "if the purpose of impoundment is not investigative, . . . in the absence of probable cause" it did "not see what purpose denying possession of the car to a passenger, a girlfriend, or a family member could possibly serve."[8] Id.

We recognize that some language in Duguay supports Smith's argument. After all, the Duguay court was troubled because the police department there did not employ "a standardized impoundment procedure." Id. at 351. Overall, however, Duguay arguably, at least, supports a determination that the impoundment here was lawful under the Fourth

---

[8]Smith contends that "the community care-taking issue has no bearing on the question of whether the decision to impound the vehicle was made pursuant to standard criteria." Appellant's br. at 10 n.2. We agree but we only are referring to it on the reasonableness issue.

Amendment. To start with the court emphasized that the "touchstone" of a Fourth Amendment analysis is "reasonableness." How could the touchstone be anything else for the Fourth Amendment, in terms, prohibits "unreasonable" searches and seizures? Thus, the adoption of a standardized impoundment procedure merely supplies a methodology by which reasonableness can be judged and tends to ensure that the police will not make arbitrary decisions in determining which vehicles to impound. These reasons for the adoption of a standardized impoundment procedure are compatible with the views of the Court of Appeals for the First Circuit which it set out in United States v. Coccia, a case that we discuss below, that under Bertine "an impoundment decision made pursuant to standardized procedures will most likely, although not necessarily always, satisfy the Fourth Amendment." 446 F.3d 233, 238 (1st Cir. 2006). Conversely, it should follow that a decision to impound a vehicle contrary to a standardized procedure or even in the absence of a standardized procedure should not be a per se violation of the Fourth Amendment.

Of course, on the facts Duguay hardly is helpful to Smith. In Duguay if the police had not impounded the vehicle, Duguay's girlfriend, who had driven the car prior to its impoundment, could have driven the car away. Moreover, the police in Duguay did not have to concern themselves with identifying the owner of the vehicle and contacting him as the defendant was the owner's son and another son of the owner, who apparently was not arrested, was present when the police arrested Duguay.

There are two quite recent cases dealing with the issue at hand, Coccia and United States v. Proctor, 489 F.3d 1348 (D.C. Cir. 2007), reflecting a conflict with respect to its resolution between the Courts of Appeals for the First and District of Columbia Circuits. Indeed, Proctor indicated that in that case the government invited it "to adopt the First Circuit's conclusion [in Coccia] that an impoundment is reasonable so long as it 'serves the government's "community caretaking" interests'" but that it "decline[d] the invitation." Id. at 1354. We will review these conflicting cases in detail in the order that the courts decided them.

14

Coccia was indicted and then convicted at a jury trial for possession of a firearm while subject to a domestic restraining order in violation of 18 U.S.C. § 922(g)(8).  Coccia, 446 F.3d at 236-37.  The evidence showed that the police seized Coccia's vehicle when he arrived at his psychiatrist's premises in an upset and hostile mental state and police and FBI agents were waiting for him.  Id. at 236.  After his vehicle was towed away the police searched it, initially without a warrant and then, after they found double-edged knives and a rifle case in the vehicle, with a warrant.  Id.  During the renewed search with a warrant the police found an assault rifle and approximately 1,300 rounds of ammunition.

In the district court Coccia moved to suppress the firearm as evidence on the ground that the police violated his Fourth Amendment rights by seizing the vehicle as he could have made other arrangements to remove it from the psychiatrist's driveway, a contention that he supported with evidence at the hearing on his motion.  Id. at 236-37.  The district court denied the motion as it held that the police's towing decision was reasonable in the circumstances confronting them.  Id. at 237.

On appeal, although Coccia recognized that there is a community caretaking exception to the requirement of the Fourth Amendment that seizures be authorized by warrant, he contended that the exception was inapplicable "because the government failed to establish that the car was towed from [the psychiatrist's] property pursuant to standard operating procedures."  Id. at 238.  Coccia understandably relied in part on Bertine in arguing that the decision to impound must be made "according to standardized criteria."  In Coccia the court described the community caretaking exception as follows:

> The community caretaking exception recognizes that the police perform a multitude of community functions apart from investigating crime.  In performing this community caretaking role, police are 'expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing and provide an infinite variety of services to preserve and protect public safety.'

15

> United States v. Rodriguez-Morales, 929 F.2d 780,
> 784-85 (1st Cir. 1991) . . . . [T]he community
> caretaking function encompasses law
> enforcement's authority to remove vehicles that
> impede traffic or threaten public safety and
> convenience.  See S. Dakota v. Opperman, 428
> U.S. 364, 368-69, 96 S.Ct. 3092 (1976).

Id. at 238.

The court of appeals rejected Coccia's argument as it read Bertine "to indicate that an impoundment decision made pursuant to standardized procedures will most likely, although not necessarily always, satisfy the Fourth Amendment." Id.  The court of appeals pointed out that courts frequently have held "that impoundments of vehicles for community caretaking purposes are consonant with the Fourth Amendment so long as the impoundment decision was reasonable under the circumstances." Id. at 239.  The court then reviewed the circumstances of the impoundment and held that even in the absence of a standardized impoundment procedures the search was reasonable.  Id. at 240.

Proctor's result was very different from that in Coccia.  In Proctor the defendant Proctor was convicted at a jury trial for possession of a firearm and ammunition by a felon in violation of 18 U.S.C. § 922(g)(1).  489 F.3d at 1349.  The police initially arrested Proctor for several motor vehicle offenses including operating a motor vehicle while intoxicated and driving under the influence of alcohol.  Id. at 1350.  Standard police procedure required the officers to impound his vehicle, apparently because its owner was not present and no one else was available to take custody of it.  Id.  At the scene of the arrest the officers conducted an inventory search of the vehicle and recovered a pistol from a bag in the trunk.  Id.  Proctor moved to suppress the evidence, contending that both the impoundment and the inventory search violated the Fourth Amendment.  Id. at 1351. After the court denied his motion and he was convicted and sentenced he appealed.

On the appeal Proctor argued that both the impoundment

16

and search of his vehicle violated the Fourth Amendment as the officers violated police department procedures in impounding and searching the vehicle. The court of appeals agreed with Proctor and reversed his conviction. Citing Bertine, the court of appeals indicated that the "Supreme Court has suggested that a reasonable, standard police procedure must govern the decision to impound." Id. at 1353. It also indicated, citing and quoting Duguay and United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004), that "[a]t least two of our sister circuits have held that the decision to impound must be made pursuant to a standard procedure." Proctor, 489 F.3d at 1353. As we already have indicated, the Proctor court took note of Coccia but declined the government's invitation to adopt Coccia's conclusion that an impoundment to serve community caretaking interests is reasonable even if it does not follow standardized procedures. Rather, it held that "if a standard impoundment procedure exists, a police officer's failure to adhere thereto is unreasonable and violates the Fourth Amendment." Id. at 354. Overall, we understand Proctor to require that to satisfy the Fourth Amendment a community caretaking impoundment must be based on (1) a reasonable standard police procedure governing decisions on whether to impound vehicles and (2) and the police must follow the procedure in the case involved.

In Proctor there were standards governing impoundment that in the circumstances surrounding Proctor's arrest required that unless he consented to the impoundment he had to be given an opportunity to make his own arrangements to remove the vehicle. The police, however, did not give him the opportunity to make those arrangements as they believed that inasmuch as no one else was present to remove the vehicle they had to remove it. Consequently, the court of appeals held that the impoundment violated the standard procedures and thus the Fourth Amendment.

In the face of the precedent that we have cited we must decide which of the two lines of cases to follow, the Coccia line focusing on the reasonableness of the vehicle impound for a community caretaking purpose, or the Proctor line favoring the more structured approach to the validity of such impoundments under the Fourth Amendment requiring that there be

17

standardized police procedures governing impoundments that the police follow.[9]  As we already have intimated we think that the Coccia outcome is correct and the facts in this case demonstrate why.  Here the police stopped a vehicle with two occupants both of whom they then arrested and thus who could not drive the vehicle.  The area in which they stopped the vehicle was one in which parked vehicles were subject to being damaged, vandalized, or stolen.  Neither occupant owned the vehicle and the police did not know who did own it and, unless the police moved the vehicle, they would have had to leave it where they stopped it in a dangerous area and, accordingly, the vehicle would have been subject to being damaged, vandalized, or stolen.  Indeed, Laser was so concerned about the situation that he explained that he believed the police had a "duty" to take care of the vehicle.

In view of the circumstances here we believe that it hardly would be possible to make a plausible argument that Heim acted unreasonably in impounding and removing the vehicle.  Indeed, while we will not go so far as to suggest that the police would have been irresponsible if Heim had not removed the vehicle we recognize that a legitimate argument could be made that they would have been.

In reaching our result we have not overlooked that, as we indicated above, it may be desirable that the police execute impoundments for community caretaking purposes pursuant to standardized procedures because the requirement that they do so will tend to encourage the police to avoid taking arbitrary action.  Therefore, we certainly do not suggest that police departments should not adopt standard impoundment policies.  But the Fourth Amendment cannot be the foundation for an equal protection requirement that the police must have standardized

---

[9]There is no doubt that in our case the impoundment was for community caretaking rather than investigative purposes for which probable cause would have been required.  In this regard, we point out that there is no suggestion in the record that the police believed that the vehicle had been stolen or had been used in the commission of a crime.

18

impoundment procedures because the amendment does not have an equal protection component. Thus, a reasonable impoundment does not become unreasonable merely because the police do not impound all vehicles found in similar circumstances any more than an unreasonable impoundment becomes reasonable merely because all vehicles in similar circumstances are impounded. Moreover, Smith does not raise Fourteenth Amendment equal protection arguments.

Finally, we point out that the requirement that a community caretaking impoundment be made pursuant to a standard police procedure could lead to untoward results. For example, the applicable standards may have been set forth in regulations that have expired and, perhaps through oversight, not have been renewed. Furthermore, a challenged impoundment may have been in a jurisdiction in which impoundments are so rare that the authorities within it quite reasonably never have seen any need to adopt impoundment standards. Moreover, the standards might not deal with all the situations that could arise, a point that the Coccia court made. Coccia, 446 F.3d at 239.


## IV. CONCLUSION

Overall we think that it is best that we judge the constitutionality of a community caretaking impoundment by directly applying the Fourth Amendment which protects people "against unreasonable searches and seizures." U.S. Const. Amend. IV. Inasmuch as the impoundment here was reasonable and Smith does not challenge the inventory search that followed the impoundment, we will affirm the order denying the motion to suppress and the judgment of conviction and sentence entered June 6, 2006.