**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2369
_____

HONDA LEASE TRUST,

Appellant

v.

MALANGA'S AUTOMOTIVE; BUTLER TOWNSHIP

MALANGA'S AUTOMOTIVE

v.

VINCENT MEDINA

_____

Appeal from the United States District Court
for the District of New Jersey
(District Court No: 2:22-cv-4862)
District Judge: Honorable Katherine S. Hayden

_____

Argued on June 11, 2025

Before: KRAUSE, PORTER, and AMBRO, *Circuit Judges*

(Opinion filed September 15, 2025)

Nicholas A. Duston **[ARGUED]**
Matthew C. Wells
Norris McLaughlin
400 Crossing Boulevard
8th Floor
Bridgewater, NJ 08807

    *Counsel for Appellant*

Catherine J. Flynn Tafaro **[ARGUED]**
Weber Gallagher Simpson Stapleton Fires & Newby
430 Mountain Avenue
Murray Hill, NJ 07974

Randall S. Watts
Marshall Dennehey Warner Coleman & Goggin
425 Eagle Rock Avenue
Suite 302
Roseland, NJ  07068

    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

AMBRO, *Circuit Judge*

Honda Lease Trust leased a car to Vicente Medina. He later violated traffic laws in the Borough of Butler, New Jersey, and it had the car towed. A towing company with which Butler

contracts, Malanga's Automotive, did not notify Honda that it possessed the vehicle until after it had sat on Malanga's lot for nearly a year. That delay did not deter Malanga's from attempting to charge Honda towing and storage fees. Affronted by both the delay and Malanga's chutzpah, Honda sued Malanga's (and later Butler) in state court. Among other claims, it contended that (1) it did not receive due process when deprived of its possessory interest in the car, (2) Butler's seizure of the car was unreasonable and violated the Fourth Amendment, and (3) Butler took the car without compensating Honda, thus violating the Fifth Amendment. The defendants later removed the suit to the District Court for the District of New Jersey, and that Court entered summary judgment for Butler on each of Honda's claims. This appeal followed.

Honda is correct that Butler's policies violate the Fourteenth Amendment's Due Process Clause. But its Fourth Amendment unreasonable seizure and Fifth Amendment takings claims fail. We thus reverse and remand in part and affirm in part.

I.   BACKGROUND

A.   Factual Background

Medina leased a 2018 Civic from Honda in July of that year. The lease included a right to buy the car from Honda at the end of its term. Almost out of the gate, Medina failed to make payments, and he defaulted by the next month. Honda had the right to repossess the Civic, but for reasons not briefed, it never did.

3

Two years later, on July 11, 2020, Butler police stopped Medina while he was driving the car and cited him for driving with a suspended license, suspended registration, and no insurance. These are violations of Butler's traffic laws, so police seized the Civic and directed Malanga's, a towing contractor for Butler, to transport and store it. The police also advised Medina where the car would be taken, but he never came to pick it up.

Butler's ordinances set rules and fee schedules for its towing contractors. Several sections of its ordinances establish licensing requirements for towing companies and fee amounts. Section 216-16 directs towing companies on how and when to notify parties that vehicles have been towed. It reads:

§ 216-16 Abandoned or Unclaimed Vehicles.

The Police Department shall be responsible for notifying the owner of an abandoned vehicle towed under this chapter that his or her vehicle has been towed to the impound area. In the event that a towed vehicle is not removed within seven days by the owner, the towing company shall be responsible for notifying the Police Department of said situation. Failure of the contractor to notify the Police Department as stated herein shall limit the storage charge to seven days only. Thereafter, it shall be the obligation of the contractor to contact the owner or operator of a stored vehicle and to furnish proof to the Department that such attempt has been made. Failure to notify the owner or operator shall cause the storage charges to end at 30 days. After an attempt

4

> to make contact or if contact is made, storage
> charges will begin again for another 30 days.
> This procedure shall be followed until storage
> fees reach a maximum of 90 days.

Butler, N.J., Code ch. 216 § 216-16 (2015).

The section does not define "owner," "operator," "abandoned," or "unclaimed." After a vehicle is impounded, the Butler Police Chief (or designee) has sole discretion to determine whether it was towed, stored, or impounded in error, and thereby waive fees. *Id.* § 216-11(D)(2). And a towing company cannot release a vehicle until the owner obtains a release form from Butler police. *Id.* § 216-14(B)(2).

Malanga's determined on July 20, 2020 that the vehicle was abandoned. Nearly a year later, in June 2021, it finally informed Honda that the car was on its lot.  It gave Honda 90 days to reclaim the vehicle before it would be sold.  When Honda tried to gain possession, Malanga's demanded payment of fees for towing, repairs, and storage.   Honda refused, and this dispute ensued.

## B.     Procedural History

In December 2021, Honda filed a complaint against Malanga's in the Superior Court of New Jersey.  Honda brought a replevin action (in effect, it sought to have possession of the vehicle returned to it) as well as claims for conversion of its property, tortious interference with a contract, and unconscionable commercial practices under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq*.

5

In July 2022, Honda amended its complaint to add Butler as a defendant, alleging three claims under 42 U.S.C. § 1983, a federal law that allows individuals to sue municipalities or government officials for violating their constitutional rights. First, Honda alleged that Butler's policies do not pass muster under the Fourteenth Amendment's Due Process Clause because they do not provide sufficiently prompt notice to all holders of property rights in seized vehicles and because there was no opportunity for a hearing to challenge the underlying tow or fees charged. Second, Honda alleged that Butler, through Malanga's, violated the Fourth Amendment by unlawfully seizing and then detaining the vehicle. Finally, Honda alleged that Butler, again through Malanga's, breached Honda's Fifth Amendment right when it took the vehicle "for public use, without just compensation." U.S. Const. amend V.

Malanga's removed this case to federal court. Honda later reached a settlement with Malanga's, and it is no longer a party to this action. Honda then moved for summary judgment on its three remaining claims against Butler, which cross-moved.

The District Court granted summary judgment to Butler on each claim. It evaluated Honda's due-process claim under the factors outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including

6

the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The Court concluded that Honda had a property interest in its vehicle. But it then explained that there was minimal risk of erroneous deprivation because Butler's policy required notifying the driver on the scene and the owner if a car was not retrieved after seven days; Malanga's failure to notify Honda during that period was not because of Butler's policies but Malanga's failure to abide them. The Court also concluded that Honda had an opportunity to be heard because "New Jersey law affords car owners in Honda's position the opportunity to be heard in various ways." Joint App'x 16. Those statutes address nonconsensual towing and give vehicle owners an opportunity to challenge removal and storage costs.

On Honda's Fourth Amendment claims, the Court concluded Butler's actions did not constitute an unlawful seizure. Typically, the Government needs a warrant before it can seize property. But a "community caretaking" exception applied—public officials do not need warrants to seize property to address, among other things, safety risks posed by an abandoned car on a public street as well as by unlicensed or uninsured drivers. *United States v. Smith*, 522 F.3d 305, 313 (3d Cir. 2008).

Finally, the Court rejected Honda's argument that Butler's actions amounted to a taking. It concluded that a governmental entity need not compensate an owner for property it lawfully acquires through governmental authority (other than the exercise of eminent domain) when a government takes private property for public use. Honda timely appealed.

7

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. §§ 1343 and 1331. We have jurisdiction under 28 U.S.C. § 1291. "We exercise plenary review over a grant of summary judgment, viewing the facts in a light most favorable to the nonmoving party, and applying the same standard that guides our district courts." *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A party is entitled to summary judgment only if it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. ANALYSIS

Each of Honda's three claims—violations of the Fourteenth Amendment's Due Process Clause, the Fourth Amendment, and the Fifth Amendment—stems from Butler's failure to notify Honda that its vehicle had been towed or to provide a hearing to challenge that tow along with Malanga's retention of the vehicle for nearly a year. For § 1983 claims like these, a municipality like Butler "may be held liable only if its policy or custom is the 'moving force' behind a constitutional violation." *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006). Here, though Malanga's was principally responsible for towing the vehicle and charging fees, it acted at Butler's behest—the Borough's ordinances and officers direct Malanga's when to tow, when to notify owners and drivers, whom it must notify, and how much it can charge for its services. Butler police must also authorize the release of any vehicle. There is thus no "substance in [the] argument that the state action required for jurisdiction under … 42 U.S.C. § 1983 is lacking." *Stypmann v.*

8

*City & Cnty. of San Francisco*, 557 F.2d 1338, 1341 (9th Cir. 1977). We thus focus our analysis on Butler's policies and procedures, and take Honda's contentions in turn.

## A. Due Process

As explained above, *Mathews* provides us with a three-part test for assessing a due-process claim. The first step is to consider "the private interest that will be affected by the official action." 424 U.S. at 335. Honda has a private interest at stake because of its "property interest in the present value of a seized vehicle." *Ford Motor Credit Co. v. NYC Police Dep't*, 503 F.3d 187, 191 (2d Cir. 2007). While the vehicle languished on Malanga's lot for just short of a year, its value depreciated. "[A] temporary deprivation of the use of [an] automobile" is also an infringement of a private interest. *City of Los Angeles v. David*, 538 U.S. 715, 717-18 (2003). When the vehicle was on Malanga's lot, Honda had a right to possess it but could not because it did not know of the impoundment.

After concluding that Honda has a private interest, we weigh "the risk of an erroneous deprivation of [that] interest through the procedures used, … the probable value, if any, of additional or substitute procedural safeguards[,] and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. What specific procedures are required is a context-dependent inquiry. *Id.* at 334. But the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (internal quotation marks omitted). "Every court which has considered th[is] issue has held that the owners of towed vehicles—

9

whether illegally parked, abandoned or junk—are entitled, at minimum, to [1] post-deprivation notice and [2] a hearing." *Propert v. District of Columbia*, 948 F.2d 1327, 1332–33 (D.C. Cir. 1991) (collecting cases). We discuss Butler's notice procedures and hearing procedures in turn.

### 1. Notice

Butler says its ordinances require Malanga's to "make sure owners of vehicles such as Honda are notified of Malanga's possession of vehicles within seven (7) days." Butler Br. 3. They do no such thing. In fact, § 216-16 leaves us with more questions than answers, and any direction contained in it is so ambiguous that it hardly counts as direction at all. First, it says the Butler Police Department must "notify[] the owner of an abandoned vehicle" that "his or her vehicle has been towed to the impound area." Butler, N.J., Code ch. 216 § 216-16 (2015). But it does not define "abandoned." Does it mean "unclaimed" or something different, such as affirmative intent by the owner to relinquish possession of a vehicle? And when does abandonment occur, when the vehicle is towed or after the towing company notifies the Butler Police Department that the car has been unclaimed for seven days? Nor does the provision state when the Police Department must send the notification. It could be when the vehicle is "towed to the impound area," or it could be after it "has been" towed to the impound area and remained there for some time. *Id.*

Particularly problematic, the section does not define "owner." *Id.* Though that term is often unambiguous, in the context of leased vehicles it is susceptible to more than one meaning. "Owner" may refer to the registered owner—the lessee who is registered with the Motor Vehicle Commission as

10

authorized to operate the vehicle (here Medina)—or the titled owner—the lessor who retains title to the vehicle (here Honda). Honda argues that the definition in Butler's "Vehicles and Traffic" chapter should apply. *See* Butler, N.J., Code ch. 225 § 225-1 (2015) (definitions). That chapter expressly incorporates the definition of "owner" under Title 39 of the New Jersey Statutes, which includes (1) "a person who holds the legal title of a vehicle," or (2) "if a vehicle is the subject" of a "lease thereof with the right of purchase … and with an immediate right of possession vested in the … lessee," then the lessee. N.J. Stat. Ann. § 39:1-1. Here, that would be Medina. But it is not obvious whether the Chapter 225 definition applies to terms in Chapter 216. In its briefing, Butler cites no definition of "owner" or evidence of a policy for identifying ownership. It simply says the "owner was understood by Malanga's to be Honda." Butler Br. 12. And at the summary-judgment stage, it is *Butler's* burden to show that its policies and procedures do not violate due process. *E.g.*, *El v. Se. Pa. Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007).

Next Butler contends that Malanga's had to act "within seven (7) days." Butler Br. 3. Yet the second sentence of § 216-16 specifies that Malanga's is not required to act until the *eighth* day. If "a towed vehicle is not removed within seven days by the owner," Malanga's must "notif[y] the Police Department." Butler, N.J., Code ch. 216 § 216-16 (2015). Malanga's failure to do so limits its "storage charges to seven days." *Id.* Then, as far as we can see from the ordinances and Butler's Standard Operating Procedures (provided in the record), the Police Department itself is not required to do anything despite knowing of, as the ordinance puts it in legalese, "said situation." *Id.*

"Thereafter, it shall be the obligation of the contractor [Malanga's] to contact the owner or operator of a stored vehicle and to furnish proof to the Department that such attempt has been made." *Id*. But again, the statute does not define "owner." Nor does it provide any guidance on how hard a towing company must try before its communication efforts can be considered an attempt. Even after an unsuccessful attempt, it can still charge the owner or operator for 30 days of storage charges, or up to 90 days if it attempts communication every 30 days. *Id.* And, at least textually, it is sufficient to attempt contact with operators only (Medina). *Id.*

Having reviewed § 216-16, it seems in cases like this—involving standard leasing contracts—that towing companies need not notify titled owners. And even to attempt communication with operators, § 216-16 provides limited incentive. This is because towing agencies can receive 90 days' worth of fees as long as they make an undefined "attempt" at outreach that, if unsuccessful, can be repeated to continue storage fees for 90 days.

Section 216-16 thus creates a risk of erroneous deprivation because it may end up impossible for an owner-lessor to identify the location of a vehicle and regain its possession quickly. More procedural safeguards are necessary, for example, to require Butler to notify all registered and titled owners of vehicles within seven days of their impoundment. Butler does not suggest that this added procedure would create unwieldy "fiscal and administrative burdens," nor do we believe it would. *Mathews*, 424 U.S. at 335. The Police Department

12

and towing companies can access titled owners in system databases just as they can registered owners.

Honda argues that "the notice of the hearing should happen reasonably soon" after an impound. Oral Arg. 8:35-42. Here, though, it conceded that a "within a month timeline would be perfectly acceptable." Oral Arg. 9:39-43. With that concession, we accept its suggested timeframe here in this instance. No doubt "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). And Honda's commercial interest is not like that of the driver who must use his vehicle to get to work. As a reference point, courts have required shorter timeframes in situations that deprive noncommercial drivers and owners of their private vehicle. *See, e.g.*, *Coleman v. Watt*, 40 F.3d 255, 261 (8th Cir. 1994) (finding a delay of a week too long in a case involving vehicle owner and driver); *Stypmann*, 557 F.2d at 1344 ("[A] five-day delay in justifying detention of a private vehicle is too long."). In those cases, the "property interest extends to the uninterrupted use of the vehicle." *Coleman*, 40 F.3d at 260. A person's "interest in a speedy hearing"—which cannot occur before receiving notice of the car's impoundment—"is substantial" because "[a]utomobiles occupy a central place in the lives of most Americans, providing access to jobs, schools, and recreation as well as to the daily necessities of life." *Id.*; *Stypmann*, 557 F.2d at 1344 ("Days, even hours, of unnecessary delay may impose onerous burdens upon a person deprived of his vehicle."). As Honda seems to recognize, however, for many of its towed vehicles it will not have a right to possession because the driver will not have defaulted on payment. Though it can be more flexible, for most other situations, especially for owner or lessee-operators, a month-long

13

notice period will be inadequate.

## 2. Hearing

Honda next argues that Butler's impound policy "does not afford any opportunity for any kind of hearing," and thus is a per se deprivation of due process. Honda Br. 9. Though the "root requirement" of due process is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest," *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) (emphasis added), Honda acknowledges that pre-deprivation hearings are not required here. "[S]ituations where some valid governmental interest is at stake … justif[y] postponing the hearing until after the event." *Id.* This is such a circumstance: "there is the necessity of quick action by the State, or … providing any meaningful predeprivation process would be impractical, [so] the Government is relieved of the usual obligation to provide a predeprivation hearing." *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008) (internal quotation marks omitted); *see David*, 538 U.S. at 719 (noting that a predeprivation hearing was impractical and not required before city's towing of vehicle).

Though it need not happen pre-tow, "[w]hen a car is towed or impounded, some form of fair and impartial hearing at which an owner is provided an opportunity to challenge the lawfulness of removing his car and assessing charges against him must be provided within a reasonable time period." *Breath v. Cronvich*, 729 F.2d 1006, 1011 (5th Cir. 1984). An ordinance is "manifestly defective" if "no opportunity [i]s presented for notice and a hearing to establish whether or not the initial removal of the vehicle was rightful or wrongful." *De Franks v. Mayor & City Council of Ocean City*, 777 F.2d 185,

14

187 (4th Cir. 1985) (internal quotation marks and brackets omitted).

Butler acknowledges that its ordinances do not provide for a hearing of any kind. Instead, it points to four New Jersey statutes that it argues allow access to a postdeprivation hearing for Honda. But none of the four statutes Butler invokes can satisfy due process because none provides the owner of a towed vehicle an opportunity to challenge the lawfulness of the tow itself.

Begin with N.J.S.A § 39:3-29.1a(b)(1), which permits municipalities to sell unclaimed vehicles that were impounded because of a lack of insurance after a "hearing." The statute does not detail the precise nature of this "hearing," but context suggests it would relate only to the sale of an impounded vehicle by a municipality rather than the lawfulness of the underlying tow. In any event, § 39:3-29.1a(b)(1) is triggered only when a municipality attempts to sell an impounded vehicle, which did not occur here.

Similarly, the New Jersey Abandoned Vehicle Act, N.S.J.A. § 39:4-56.6, permits municipalities or towing companies to sell impounded vehicles that have gone unclaimed for more than 90 days. Unlike § 39:3-29.1a(b)(1), however, the Abandoned Vehicle Act does not provide for any hearing at all and conditions return of a vehicle on the payment of towing and storage fees. *See id.*

Next, the New Jersey Predatory Towing Act, N.J.S.A. § 56:13-16(i), requires towing companies to "notify the operator, owner, lessor, and lienholder of a vehicle that has been subject to non-consensual towing" within 30 days of the tow. But it

15

does not provide for a hearing. A separate section of this Act permits the Director of the Division of Consumer Affairs to order a towing company that has charged an "unreasonable" fee to "reimburse … the excess cost." *Id.* § 56:13-21(b). But the Director need not provide a vehicle owner with a hearing. And by its own terms, this section concerns only the excess fees charged by a towing company, not the lawfulness of the underlying tow.

Finally, the Garage Keeper's Act, N.J.S.A. § 2A:44-21–26, permits vehicle owners who "consider[] the amount" charged by a towing company to be excessive to offer instead "what he considers to be reasonably due [in charges] and demand possession of the motor vehicle." *Id.* § 2A:44-23. Then, "[i]f possession is refused, he may immediately bring an action for possession" of the vehicle. *Id.* This action for possession and the "summary hearing" it affords, however, relate only to possession of the vehicle and whether the fees charged by a towing company were excessive—that is, whether they went beyond "reasonable fees, charged in accordance with a duly authorized fee schedule established by a municipality or other political subdivision of this State for non-consensual towing." *Id.* § 2A:44-21. There is no way to challenge the lawfulness of a municipality's decision to tow the vehicle in the first place. Indeed, the municipality is not even a party to the action or hearing. As a result, a vehicle owner whose car is towed unlawfully remains obliged to pay some fee, even if only a "reasonable" one, to recover his vehicle.

Because none of these New Jersey statutes provides a hearing to challenge the lawfulness of a tow, they cannot satisfy Butler's due process obligations. And we do not think that it would unduly burden Butler to afford such hearings to

16

vehicle owners following a tow.[1] *Cf. B.S. v. Somerset County*, 704 F.3d 250, 272 (3d Cir. 2013) (holding that it would be "hard to imagine" an instance in which fiscal and administrative burdens would justify the absence of any hearing at all); *Propert*, 947 F.2d at 1332 ("[T]he amount of process required can never be reduced to zero."). Butler's failure to do so here deprived Honda of due process.

\* \* \*

Butler's procedures have notice deficiencies that create a risk of erroneous deprivation: they allow towing companies to charge up to 90 days of storage fees absent successful communication with a vehicle's owner, and they do not require

---

[1] We disagree with Honda's contention, however, that due process requires Butler to initiate those hearings on its own. Rather, as our sister circuits have held, postdeprivation hearings are constitutionally valid if made available "on demand" or "after a request." *Cokinos v. District of Columbia*, 728 F.2d 502, 503 (D.C. Cir. 1983) ("[A] hearing on the underlying traffic violation is available on demand during normal working hours," and the driver "knew he could challenge" (emphases added)); *De Franks*, 777 F.2d at 186 (upholding a policy where "the hearing [was] to be had within twenty-four hours after a request for it"); *Goichman v. City of Aspen*, 859 F.2d 1466, 1468 & n.5 (10th Cir. 1988) ("the reasonable availability of a hearing" that was "on demand" "satisfie[d] the strictures of due process"). Requiring a municipality like Butler to schedule a hearing every time it tows a vehicle would impose significant "administrative burdens," particularly as many owners and operators of towed vehicles may not wish to contest a tow. *Mathews*, 424 U.S. at 335.

17

titled owners to be notified. And because Butler's ordinances do not provide an opportunity for vehicle owners to challenge the lawfulness of a tow, owners whose vehicles are towed have no choice but to pay at least some fee to get their vehicles back. Given the relatively light burden on Butler to change its notice policies and provide the necessary hearings, we reverse and remand the District Court's grant of summary judgment on Honda's due process claim.

## B. Fourth Amendment

Honda next brings a Fourth Amendment claim of an unlawful seizure of its vehicle. It "is not challenging Butler's ability to seize and remove vehicles from the road." Honda Br. 18; *see also Caniglia v. Strom*, 593 U.S. 194, 196 (2021) ("[P]olice officers who patrol the public highways are often called to discharge noncriminal community caretaking functions, such as responding to disabled vehicles or investigating accidents." (internal quotation marks omitted)); *United States v. Smith*, 522 F.3d 305, 313 (3d Cir. 2008) ("[C]ourts frequently have held that impoundments of vehicles for community caretaking purposes are consonant with the Fourth Amendment so long as the impoundment decision was reasonable under the circumstances." (internal quotation marks omitted)). Rather, it argues that "[d]etention for longer than necessary causes an initially lawful seizure to become unreasonable." Honda Br. 32.

Whether the prolonged detention of legally seized property implicates the Fourth Amendment is an issue that has divided our sister circuits. The First, Second, Sixth, Seventh, and Eleventh Circuits have held that it does not. *See Denault v. Ahern*, 857 F.3d 76, 84 (1st Cir. 2017); *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004);

18

*Fox v. Van Oosterum*, 176 F.3d 342, 352 (6th Cir. 1999); *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003); *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009). The Ninth and D.C. Circuits, in contrast, have held that it does. *See Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017); *Asinor v. District of Columbia*, 111 F.4th 1249, 1252 (D.C. Cir. 2024).

We have not addressed this issue in the Fourth Amendment context, but we have held, as a matter of due process and the Fifth Amendment's Takings Clause, that property legally seized as part of a criminal trial must be returned after the end of a trial unless it is contraband or subject to forfeiture. *See United States v. 608 Taylor Ave., Apartment 302, Pittsburgh, Pa.*, 584 F.2d 1297, 1302 (3d Cir. 1978) ("[T]he government may not[,] by exercising its power to seize, effect a [d]e facto forfeiture by retaining the property seized indefinitely."); *Frein v. Pennsylvania State Police*, 47 F.4th 247, 252-53 (3d Cir. 2022) ("If the government wants to keep the property after the conviction becomes final, it needs some justification."). In those cases, we explained that the government may lawfully seize property if some Fourth Amendment justification exists, *see 608 Taylor Ave.*, 584 F.2d at 1302, *Frein*, 47 F.4th at 252, but this justification can run out, *see id.* at 253. Our case law is thus in agreement with the Supreme Court's observation in *United States v. Jacobsen* that a seizure of property that was reasonable at its inception can become unreasonable if unduly prolonged, *see* 446 U.S. 109, 124 n.5 (1984), as well as the D.C. Circuit's more recent exploration of the history and original meaning of the Fourth Amendment demonstrating that its protections apply to both the initial seizure and ongoing retention of private property, *see Asinor*, 111 F.4th at 1254. We thus hold that when the government seizes property, the Fourth

19

Amendment requires that its initial seizure and continued retention be reasonable.

Here, however, that standard is easily satisfied because it was reasonable for Butler to retain possession of the vehicle until Honda requested its release. Under the caretaking exception, a city may reasonably seize a vehicle whose operator cannot lawfully remove it because he or she lacks a license, registration, or insurance. *See, e.g., Miranda v. City of Cornelius*, 429 F.3d 858, 865 (9th Cir. 2005). Similarly, it is reasonable for a city to retain possession of a vehicle until the vehicle's owner or operator can demonstrate that the vehicle can be safely and lawfully removed. Here, once Honda alerted Butler seeking the return of the vehicle and made the required showing, borough officials promptly issued the necessary release form. Thus, there was no unreasonable retention of Honda's property and no Fourth Amendment violation.[2]

## C. Fifth Amendment

Honda's final argument is that Butler's seizure of its vehicle was an uncompensated "taking" in violation of the Fifth Amendment. It explains Butler "became liable for a taking"

---

[2] To the extent Honda's Fourth Amendment claim rests on Butler's failure to notify it about the whereabouts of its vehicle, thus prolonging the retention, that issue may be properly rectified as part of Honda's due process claim. *See City of W. Covina v. Perkins*, 525 U.S. 234, 240 (1999) ("[W]hen law enforcement agents seize property pursuant to a warrant, *due process* requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." (emphasis added)).

when its justification for a seizure "ran out." Honda Br. 40. "The violation of the Takings Clause occurred after Butler's need to caretake[] dissipated" because Butler had kept the vehicle longer than necessary. Reply Br. 23. As we explained above, however, Butler's Fourth Amendment justification never "ran out" because it was reasonable for it to keep possession of the vehicle until Honda sought its return.[3] Thus, no taking occurred.

Finally, to the extent Honda asserts that Butler "g[ave] away seized property to a third party," this again fails as a factual matter. Reply Br. 23. Butler did not give Malanga's title to the vehicle, only a lien. N.J. Stat. Ann. § 2A:44-21 ("The lien shall not be superior to, nor affect a lien, title or interest of a person held by virtue of a prior conditional sale."). It contracted with Malanga's and imposed conditions on the vehicle's release—some of which are imposed to ensure continued public safety and return of the vehicle to its rightful owner. Hence, here "[t]he Takings Clause claim is a non-starter." *Johnson v. Manitowoc Cnty.*, 635 F.3d 331, 336 (7th Cir. 2011) (citing *Bennis*, 516 U.S. at 452 and *AmeriSources Corp.*, 525 F.3d at 1154).

---

[3] In *Frein*, we left open the question, in the context of property seized for use in a criminal trial, of "whether the plaintiff must first demand return of the property and be refused." 47 F.4th at 253. We do not resolve that question here. Rather, we hold that in the context of nonconsensual towing, and absent any due-process violation, a municipality's retention of a vehicle remains reasonable until the owner or operator of the vehicle demonstrates that it may be safely and lawfully reclaimed, and so no taking can occur if the vehicle is returned promptly after that demonstration has been made.

21

\*     \*     \*

Honda did not know the whereabouts of its impounded vehicle for nearly a year because of Butler's policies. Changes to the Borough's notification protocol would rectify that error in future cases. As for a hearing, due process requires Butler to provide for a hearing to vehicle owners who wish to challenge the lawfulness of a tow to regain their property without the imposition of towing or storage fees.

Honda's Fourth and Fifth Amendment claims, however, do not persuade us. The concern underlying them—Butler's and Malanga's retention of its vehicle for nearly a year—is best addressed through Honda's due process claim.

We therefore reverse and remand in part and affirm in part.

22